```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/9/2021
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------X
UNITED STATES OF AMERICA,           :
                                    :
                                    :           **21 CR 263 (VM)**
          -against-                 :           <u>DECISION AND ORDER</u>
                                    :
MANUEL ANTONIO SUQUILANDA,          :
                                    :
                    Defendant.      :
----------------------------------X

**VICTOR MARRERO, U.S.D.J.:**

Defendant Manuel Antonio Suquilanda ("Suquilanda" or "Defendant") was charged with illegal reentry after removal subsequent to a conviction for an aggravated felony in violation of 18 U.S.C. §§ 1326(a) and (b)(2). (See "Indictment," Dkt. No. 7.) Now before the Court is Suquilanda's motion to dismiss the Indictment on the ground that the grand jury did not reflect a fair cross section of the community, in violation of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, <u>et</u> <u>seq.</u> ("JSSA"), and the Sixth Amendment to the Constitution.[1] (See Dkt. No. 17; "Motion," Dkt. No. 18.)

In support of the Motion, Suquilanda attaches an expert Declaration from Jeffrey Martin. ("Martin Decl.," Dkt. No.

---

[1] Suquilanda's opening brief makes reference to the Fifth Amendment as well. (<u>See</u> Motion at 1.) However, the Motion makes no argument with respect to the Fifth Amendment, nor does the Fifth Amendment appear in the Motion caption or anywhere of substance in the Reply. (<u>See</u> generally Motion, Reply.) Therefore, the Court assumes that the reference to the Fifth Amendment in the Motion was in error and will not address the Fifth Amendment in this Order.

1

18-2.) The Court also received the Government's opposition ("Opposition," Dkt. No. 19), which attached an expert Affidavit from Bernard R. Siskin ("Siskin Aff.," Dkt. No. 19-1). The Court also received a reply brief in support of the Motion. ("Reply," Dkt. No. 21.) For the reasons set forth below, the Motion is DENIED.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

A complaint was filed against Suquilanda on March 19, 2021 alleging that Suquilanda unlawfully reentered the United States after having been removed subsequent to a conviction for an aggravated felony. A grand jury seated in Manhattan returned the Indictment on April 21, 2021. On April 29, 2021, the Court granted Suquilanda's request for authorization to inspect grand jury records related to the composition of the grand jury that returned his indictment. (See Dkt. No. 11.) The present Motion followed.

### B. THE SDNY JURY PLAN

The jury-selection procedures in this District are governed by the 2009 Amended Plan for the Random Selection of Grand and Petit Jurors in the United States District Court for the Southern District of New York (the "SDNY Jury Plan").[2]

---

[2] The SDNY Jury Plan is available at https://nysd.uscourts.gov/sites/default/files/pdf/juryplan_feb_2009.pdf (last visited July 26, 2021).

2

The SDNY Jury Plan contemplates the creation of Master Jury Wheels and Qualified Jury Wheels. See SDNY Jury Plan at art. III.A, IV.A. Consistent with their naming, the Master Jury Wheels include "master" lists of prospective jurors derived from voter-registration logs, while the Qualified Jury Wheels include "all persons who have been found qualified to serve as jurors." Id. Under the SDNY Jury Plan, the Master Jury Wheels "shall be emptied and refilled by not later than September 1 following the date of each Presidential Election." Id. art. III.B.

From among the Master Jury Wheels, qualified jurors are identified using "jury qualification questionnaires" sent to prospective jurors[3] once or twice a year, "or more frequently, if necessary." Id. art. III.D. Once returned, the questionnaires are "reviewed by the Clerk and finally evaluated by a district judge as necessary" to determine eligibility and inclusion in the Qualified Jury Wheels.[4] Id. Once a month, jurors from the Qualified Jury Wheels are

---

[3] "The number of names to be drawn shall be determined by the Clerk based upon anticipated juror demands for the ensuing six months." SDNY Jury Plan, art. III.D.

[4] Certain members of the Master Jury Wheels are excused or deferred upon request based on "undue hardship or extreme inconvenience," including, for example, those who are responsible for the daily care of children under the age of twelve, or persons over seventy years old. Id. art. VI. Likewise, members of certain other groups are exempt, such as active members of the Armed Forces or public officers of the government "actively engaged in the performance of official duties." Id. art. V.

3

summoned based on anticipated requirements for the coming month and then randomly assigned to grand or petit juries as needed. Id. art. III.F, IV.C.

Two courthouses comprise this District: Manhattan and White Plains. Master Jury Wheels and the Qualified Jury Wheels are created separately for each respective courthouse. The Manhattan courthouse draws from residents of New York, Bronx, Westchester, Putnam, and Rockland counties, and the White Plains courthouse draws from residents of Westchester, Putnam, Rockland, Orange, Sullivan, and Dutchess counties.[5] SDNY Jury Plan, art. III.C, IV.B. The proportion of jurors drawn from each county for the master wheels is the same as the proportion of registered voters in that county. See id. art. III.A, III.B.

Like Suquilanda, many criminal defendants throughout the district have brought similar motions to dismiss indictments on the grounds that the SDNY Jury Plan violates their right to juries comprised of a fair cross section of the community. Many of these motions have been denied on similar grounds. See, e.g., United States v. Middlebrooks, No. 21 CR 89, 2021

---

[5] Given that both the Manhattan and White Plains courthouses draw from Westchester, Putnam, and Rockland counties, the SDNY Jury Plan provides that jurors selected for service from those counties "shall be then divided between the Manhattan and White Plains Qualified Wheels" in such a way that "reflect[s] the relative number of registered voters in each county within the respective Master Jury Wheels." SDNY Jury Plan, art. IV.B.

4

WL 2402162 (S.D.N.Y. June 10, 2021); United States v. Nieves, No. 19 CR 354 (S.D.N.Y. April 14, 2021), ECF No. 98; United States v. Jarrett, 19 CR 67 (S.D.N.Y. April 12, 2021), ECF No. 104; United States v. Tagliaferro, No. 19 CR 472, 2021 WL 1172502 (S.D.N.Y. Mar. 29, 2021); United States v. Segovia-Landa, No. 20 CR 287, 2021 WL 1966117 (S.D.N.Y. May 17, 2021). This Court has also denied a motion to dismiss raising similar claims, albeit with a somewhat distinct factual background. See United States v. Charles, No. 20 CR 419, 2021 WL 2457139 (S.D.N.Y. June 16, 2021).

C.   THE PARTIES' ARGUMENTS

Suquilanda argues that "Black and Latino" jurors were significantly underrepresented in the Manhattan qualified jury wheel. He argues that his Sixth Amendment right to a jury comprised of a fair cross section of the community was violated because (1) Blacks and Latinos are a "distinct group"; (2) they were significantly underrepresented on the Manhattan grand jury regardless of the method and groups of comparison utilized; and (3) the underrepresentation was "systematic" because the underrepresentation has persisted, and in fact grown, over an extended period of time. Suquilanda further argues that the underrepresentation was systematic because the SDNY Jury Plan is defective in that inactive voters are excluded. Suquilanda lastly argues that the

5

Government violated the JSSA for substantially the same reasons regarding the exclusion of inactive voters.

The Government counters that Black and Latino jurors were not underrepresented on Suquilanda's grand jury because (1) there is no underrepresentation when analyzing the correct populations and (2) Suquilanda has not adequately demonstrated that any alleged underrepresentation is "systematic." According to the Government, Suquilanda failed to meet his burden by relying solely on statistics showing underrepresentation without identifying the alleged systemic defect. The Government further argues that any alleged underrepresentation is only problematic when not resulting from "external forces." The Government lastly argues that Suquilanda's JSSA claim fails because Suquilanda has not established that any of the alleged violations have a significant impact on the jury pool, none violate the JSSA's requirements, and technical errors are not considered violations.

## II.   APPLICABLE LAW

A.   THE SIXTH AMENDMENT

The Sixth Amendment guarantees criminal defendants the right to a jury panel "drawn from a source representing a 'fair cross section' of the community." United States v. Jackman, 46 F.3d 1240, 1244 (2d Cir. 1995) (quoting Taylor v.

6

Louisiana, 419 U.S. 522, 536 (1975)). To establish a prima facie violation of the Sixth Amendment's fair-cross-section guarantee, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979).

B. THE JSSA

The JSSA establishes that all criminal defendants "shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The JSSA "goes beyond prohibition of 'intentional' distortions and provides that in certain cases affirmative measures must be undertaken to insure that 'juries [are] selected at random from a fair cross section of the community.'" United States v. Fernandez, 480 F.2d 726, 733 (2d Cir. 1973) (citations omitted); see also 28 U.S.C. § 1863(a) ("Each United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives."). "[T]he Duren test governs fair cross section challenges under both the [JSSA]

and the Sixth Amendment" United States v. LaChance, 788 F.2d 856, 864 (2d Cir. 1986).

### III.   DISCUSSION

A.   THE SIXTH AMENDMENT

The parties do not dispute that Suquilanda has satisfied the first prong of the Duren test. "Unquestionably," Blacks and Latinos are "distinctive" in the community. United States v. Rioux, 97 F.3d 648, 654 (2d Cir. 1996) ("Rioux has satisfied the first element of the Duren test: Blacks and Hispanics are unquestionably 'distinctive' groups for the purposes of a fair-cross-section analysis." (citation omitted)).

The parties dispute whether Suquilanda has satisfied the second and third elements. Because the Court finds that Suquilanda has not established systematic exclusion (the third element), it need not address arguments related to the underrepresentation factor of the Duren analysis (the second element). See, e.g., Middlebrooks, 2021 WL 2402162, at *3 (explaining that because the defendant failed to satisfy the third element, "[t]he Court does not need to evaluate the second Duren factor of underrepresentation").

To establish systematic exclusion, a defendant must show that "the underrepresentation is due to the system of jury selection itself." Rioux, 97 F.3d at 658. In other words,

"systematic exclusion does not occur simply because a facially neutral disqualification criterion disproportionately impacts a particular group." United States v. Barlow, 732 F. Supp. 2d 1, 40 (E.D.N.Y. 2010), aff'd, 479 F. App'x 372 (2d Cir. 2012). Thus, when the cause of exclusion "is an external force, not an inherent flaw within the Jury Plan," any underrepresentation is not "systematic." Tagliaferro, 2021 WL 1172502, at *4.

Here, Suquilanda initially suggests that he has made a prima facie showing of systematic exclusion simply by presenting statistics regarding the alleged underrepresentation of Blacks and Latinos on the Manhattan wheels. (See Motion at 9-12.) But statistics alone are generally not sufficient to carry the defendant's burden to make a prima facie showing. See Anderson v. Casscles, 531 F.2d 682, 685 (2d Cir. 1976) ("[T]he law is clear that evidence of mathematical disparity, without more, is insufficient to make out a prima facie case of improper jury selection."); see also Rioux, 97 F.3d at 658.

On reply, however, Suquilanda expands his arguments and identifies "five key choices" that result in the systematic underrepresentation of Blacks and Latinos: (1) drawing the master wheel exclusively from voter-registration rolls; (2) only refilling the master wheel every four years; (3) removing

9

inactive voters from the wheel; (4) failing to attempt to reach jurors who do not respond to questionnaires; and (5) failing to reach jurors whose questionnaires were deemed undeliverable. (See Reply at 8-9.)

The Court previously addressed each of these arguments in its decision in Charles. See Charles, 2021 WL 2457139, at *4-5. And given that there are no meaningful differences between the arguments in Charles and the ones advanced by Suquilanda, the Court comes to the same conclusion here. In brief, for the reasons given by this Court in Charles, each "key choice" identified by Suquilanda either does not directly create the complained-of underrepresentation or is an "external force" and "not an inherent flaw within the Jury Plan." See id.; see also Middlebrooks, 2021 WL 2402162, at *3-4. The Court therefore concludes that Suquilanda has not made a prima facie case that any alleged underrepresentation is systematic and will deny his motion to dismiss based on the Sixth Amendment.

B.  THE JSSA

Fair-cross-section challenges brought under the JSSA are also analyzed using the Sixth Amendment's Duren test. See LaChance, 788 F.2d at 864. Thus, because his fair-cross-section challenge fails under the Sixth Amendment, Suquilanda's JSSA challenge also fails. See id. ("[B]ecause

the Duren test governs fair cross section challenges under both the [JSSA] and the Sixth Amendment, our discussion of the statutory challenge also disposes of his constitutional claim.").

To the extent Suquilanda separately argues that the Government failed to comply with the JSSA, the claim is meritless. Suquilanda argues that the JSSA was violated by (1) the exclusion of inactive voters; and (2) the exclusion of individuals who provided alternate mailing addresses when registering to vote in Putnam County. (See Motion at 14-17.)

The Court finds that these allegations set forth nonactionable "technical violations" at best. LaChance, 788 F.2d at 870 ("Mere technical violations of the procedures prescribed by the Act do not constitute substantial failure to comply with its provisions." (internal quotation marks and citations omitted)); see also Allen, 2021 WL 431458, at *10-11 (explaining that "even if the exclusion of inactive voters is a violation of the JSSA, it is certainly a technical violation," "[t]he clerical issue involving improperly transcribing alternate addresses of individuals to the master wheel is a technical violation of the JSSA," and "the improper prorating of voters across counties is also a technical violation of the JSSA"). Moreover, as the district court in Rioux explained, "[a] substantial violation of the [JSSA]

11

occurs only when the alleged violation frustrates the Act's principles of random selection." Rioux, 930 F. Supp. 1558, 1580-81 (D. Conn. 1995), aff'd, 97 F.3d 648. Suquilanda has not established that any of the alleged technical violations of the JSSA rise to this level. E.g., Schulte, 2021 WL 1146094, at *9-10 (rejecting a JSSA challenge on similar grounds).

## IV.  ORDER

Accordingly, for the reasons set forth above, defendant Manuel Antonio Suquilanda's motion to dismiss the indictment (Dkt. No. 17) is **DENIED**.

**SO ORDERED:**

Dated:   New York, New York
         09 August 2021

_____
Victor Marrero
U.S.D.J.