**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

August 20, 2021

The Hon. Victor Marrero
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007

*Via ECF and email to Samuel_Ford@nysd.uscourts.gov*

Re:   **United States v. Manuel Suquilanda, 21-cr-263-VM**

Dear Hon. Judge Marrero,

 We write pursuant to the Court's order of August 13, 2021 to set forth the bases for Mr. Suquilanda's forthcoming motion to dismiss the Indictment in the above-captioned case.  Mr. Suquilanda will move this Court to dismiss the Indictment for two independently sufficient reasons.  **First**, the immigration judge who purported to order Mr. Suquilanda's removal in April of 2005 lacked jurisdiction to do so.  **Second**, the statute under which Mr. Suquilanda is being prosecuted, 8 U.S.C. § 1326, is unconstitutional under the Equal Protection Clause because it was enacted with racist and discriminatory intent and has a disparate impact on Latinx persons.

 **First**:  The jurisdiction of an immigration judge vests when a "notice to appear" is filed with the court.  8 C.F.R. § 1003.14(a); *Banegas-Gomez v. Barr*, 922 F.3d 101, 111 (2d Cir. 2019).  A "notice to appear" ("NTA") is akin to a criminal charging document. *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1482 (2021).  It is defined by statute as a document that includes, *inter alia*, the charges of removability and notice of "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i).   In or about March of 2005, the Immigration and Customs Enforcement agency ("ICE") prepared a Form I-862, captioned "Notice to Appear," informing Mr. Suquilanda that he was "ordered to appear before an immigration judge of the United States Department of Justice . . . to show why you should not be removed from the United States" based on these charges.  But the blanks in the form for specifying the address of the immigration court and the date and time of the hearing were left blank, as set forth below:

> YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: _____
> TO BE CALENDARED AND NOTICE PROVIDED BY THE OFFICE OF THE IMMIGRATION COURT
> (Complete Address of Immigration Court, Including Room Number, if any)
> on **a date to be set** at **a time to be set** to show why you should not be removed from the United States based on the
>        (Date)                (Time)
> charge(s) set forth above.

The regulations regarding the NTA provide, in conformity with the statute, that it "must" include "[t]he address of the Immigration Court where the Service will file the . . . Notice to Appear."  8 C.F.R. § 1003.15(b)(6). However, the regulations provide that the time and

date information need only be included in the NTA "where practicable" and in other cases may be provided later in a separate document. 8 C.F.R. § 1003.18(b). The Supreme Court recently ruled that this two-step notice process violates the unambiguous requirements of the statute. *Niz-Chavez*, 141 S. Ct. at 1485; *see also Pereira v. Sessions*, 138 S. Ct. 2105, 2115, 2116 (2018) (NTA lacking date and time information "is not a 'notice to appear'" and is "deprived of its essential character.").[1] In line with those decisions, some district courts have found that an NTA form lacking hearing date and time information and/or the court's filing address is not sufficient to vest jurisdiction with the immigration court. *See, e.g.*, *United States v. Benitez-Dominguez*, 440 F. Supp. 3d 202 (E.D.N.Y. 2020); *United States v. Ramos-Urias*, No. 18-CR-00076, 2019 WL 1567526, at *2 (N.D. Cal. Apr. 8, 2019); *United States v. Quijada-Gomez*, 360 F. Supp. 3d 1084 (E.D. Wa. 2018).[2]

The Second Circuit has held that an NTA lacking date and time information still vests jurisdiction, relying on 8 C.F.R. § 1003.18(b), the regulation that permits two-step notice. *Banegas-Gomez*, 922 F.3d at 111.[3] However, *Banegas-Gomez* does not foreclose Mr. Suquilanda's motion, for three reasons. *First*, his NTA was missing not only date and time information but the court address as well, an issue *Banegas-Gomez* does not address; even the regulations treat such information as mandatory in the NTA itself. *Benitez-Dominguez*, 440 F. Supp. 3d at 210-11 (discussing § 1003.15(b)(6)). *Second*, the Circuit issued *Banegas-Gomez* before the Supreme Court clarified, in *Niz-Chavez*, that the two-step notice process is an impermissible departure from "the statute's clear text." *Niz-Chavez*, 141 S. Ct. at 1485. Its reasoning in reliance on § 1003.18(b) is therefore bad law.[4] *Third*, *Banegas-Gomez* simply overlooks a relevant statute that belies its incorrect

---

[1] As Mr. Suquilanda will explain in detail in his motion, this regulation was based on practical concerns regarding transition to a new system (prior to 1997, hearing information was not required in the case-initiating document). 62 Fed. Reg. 443, 449 (Jan. 3, 1997). It then accreted into permanent practice, but plainly violates the statute. *Niz-Chavez*, 141 S. Ct. at 1485 ("[P]leas of administrative inconvenience . . . never justify departing from the statute's clear text." (internal quotation omitted)).

[2] There is contrary Ninth Circuit authority, but as Mr. Suquilanda will explain, it is not persuasive, and the issue remains under review. *See United States v. Bastide-Hernandez*, No. 19-30006 (9th Cir.) (en banc reh'g pet'n filed July 26, 2021).

[3] Several courts in this District have rejected arguments similar to Mr. Suqilanda's, in reliance on *Banegas-Gomez*. *United States v. Brito*, No. 20-cr-200 (KMW), 2021 WL 2355068, (S.D.N.Y. June 9, 2021); *United States v. Dominguez-Bido*, No. 20-cr-34 (PAC), 2021 WL 1026386, *6 (S.D.N.Y.), *notice of appeal filed* (Jul. 29, 2021); *United States v. Taveras*, 20-cr-240 (PAE), 2020 WL 7059493 (S.D.N.Y. Dec. 2, 2020).

[4] Undersigned counsel is aware of several pending cases raising this issue in the circuit. *E.g.*, *Graham v. Garland*, 18-ag-1835 (2d Cir.) (argued June 21, 2021). Last month, the Board of Immigration Appeals itself issued a request for amicus briefs on the issue of whether, in light of *Niz-Chavez*, it should revisit its prior holding that an NTA lacking date-and-time information vests jurisdiction with the IJ. *See* https://www.justice.gov/eoir/page/file/1413376/download (Jul. 20, 2021). The Second Circuit had aligned itself with the BIA in *Banegas*. 922 F.3d at 111.

conclusion that "no statutory glue" binds the requirements for an NTA to the immigration court's jurisdiction, as Mr. Suquilanda will explain in detail in his motion. *Banegas*, 922 F.3d at 111; *but see* Pub. L. No. 104-209, Div. C, § 309(c)(2) (Sept. 30, 1996) (providing that an NTA complying with the statute confers jurisdiction). *Banegas* does not foreclose this argument, which it did not consider. *In re Old Carco LLC*, 621 B.R. 303, 309 (Bankr. S.D.N.Y. 2020) (district court not bound by "issues an appellate court did not address."). Finally, Mr. Suquilanda will demonstrate that his waiver of administrative appeal and the resulting default of judicial review—which were not knowing and intelligent—do not foreclose his motion under 8 U.S.C. § 1326(d)(1) and (2), even assuming these provisions apply to his motion based on a legally null order. *See, e.g.*, *Benitez-Dominguez*, 440 F. Supp. 3d at 208. The government may argue that the Supreme Court's recent decision in *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021) alters the analysis, but the Second Circuit's prior cases excusing unknowing waiver of agency and judicial appeal are premised on constitutional concerns that *Palomar-Santiago* expressly did not reach, and remain good law. *See, e.g.*, *United States v. Sosa*, 387 F.3d 131, 136-37 (2d Cir. 2004); *cf. Palomar*, 141 S. Ct. at 1622 n.4. To the extent the Court finds otherwise, Mr. Suquilanda will argue that thus interpreted, §§ 1326(d)(1) and (2) render the statute unconstitutional.

**Second**: The illegal re-entry statute was enacted in 1929 with explicit racial animus against persons of Latinx descent, as the government conceded in another illegal re-entry case. *See United States v. Carillo-Lopez*, No. 20-cr-26 (D. Nev. Aug. 18, 2021) (Du, C.J.) (slip op. at 12 & n.17).[5] It also has a manifestly disparate impact on that group, given the statute's nearly universal enforcement at the southern border. *See id.* at 9 & n.13. The statute was re-enacted and situated within the modern immigration statute in 1952, but that re-enactment, as well, was undertaken with discriminatory intent and did not purge the law of the taint of Congress' original motive. *See id.* at 17-27 (discussing background and passage of the McCarran-Walter Act of 1952). As Mr. Suquilanda will show and as a court in the District of Nevada recently found, Congress' express discriminatory intent coupled with the statute's ongoing disparate impact on Latinx persons such as the defendant renders the statute violative of the Equal Protection Clause under the standard elaborated in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). *Carillo-Lopez*, slip op. at 1.

                                      Respectfully submitted,

                                      /s
                                      S. Isaac Wheeler
                                      Federal Defenders of New York, Inc.
                                      (917) 612-0059 (cell)
                                      isaac_wheeler@fd.org

---

[5] *See also id.* at 12-14 (surveying legislative history including remarks of members that the law represented "applied eugenics" and that Latino immigrants were "poisoning American citizens"). This opinion, issued two days ago, is docketed on Pacer (No. 20-cr-26 (D. Nev.), ECF dkt # 60) but is not yet available on Westlaw. A copy is attached.