

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 27, 2021

**BY ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:    ***United States v. Manuel Suquilanda*, 21 Cr. 263 (VM)**

Dear Judge Marrero:

       The Government writes in response to defendant Manuel Suquilanda's letter detailing the bases for his forthcoming motion to dismiss the Indictment in the above-captioned case. First, the defendant argues that the immigration judge who ordered his removal in April 2005, after the defendant was convicted of statutory rape of a 14-year-old, lacked jurisdiction to do so because of deficiencies in the Notice To Appear ("NTA") by which he was charged with removability. Second, the defendant contends that 8 U.S.C. § 1326 ("Section 1326") is unconstitutional under the Equal Protection Clause. Both contentions manifestly lack merit and should be rejected.

**I.**      **Background**

       In 2004, the defendant, a citizen of Ecuador, pleaded guilty to rape in the second degree, in violation of New York Penal Law 130.30, and was sentenced to ten years' probation. On March 23, 2005, the defendant was charged by U.S. Immigration and Custom's Enforcement through an NTA that ordered the defendant "to appear before an Immigration Judge of the United States Department of Justice" and noted that the time, date, and location would be calendared at a later date. The defendant was subsequently served a "Notice of Hearing in Removal Proceedings," dated March 20, 2005, which included the date, time and location of the removal proceeding. In April 2005, an immigration judge ordered the defendant's removal, and he was removed to Ecuador. In February 2021, the defendant was arrested in the Bronx after his daughter reported to the New York City Police Department that the defendant had assaulted her. On March 19, 2021, he was charged, in the instant matter, with unlawful entry into the United States subsequent to a conviction for the commission of an aggravated felony, in violation of Section 1326 (a) and (b)(2).

**II.**     **Argument**

      **A.**     **The Defendant's Jurisdictional Challenge Fails.**

       The defendant's challenge to the immigration judge's jurisdiction, more than 15 years after the defendant's removal, is foreclosed by *Banegas-Gomez v. Barr*, 922 F.3d 101 (2d Cir. 2019),

August 27, 2021
Page 2

where the Second Circuit held that an alleged defect in an NTA can be cured if the information not included in the NTA is later provided to the alien.  In any event, the defendant has failed to satisfy the requirements for collaterally attacking his removal order under Section 1326(d).

In *Banegas-Gomez*, the Second Circuit rejected the defendant's contention that an NTA that omits the time and date of the initial removal hearing is grounds to challenge the immigration court's jurisdiction where a notice of hearing specifying the information is later sent to the alien. *Id.* at 112.  Courts in this District have ruled that the same applies where an NTA omits the address of the immigration court.  *United States v. Taveras*, 504 F. Supp. 3d 272, 282 (S.D.N.Y. 2020); *United States v. Dominguez-Bido*, No. 20 CR. 34 (PAC), 2021 WL 1026386, at *7 (S.D.N.Y. Mar. 17, 2021).  Here, any defect in the NTA was cured prior to the hearing when the immigration court staff certified that it served on the defendant a "Notice of Hearing in Removal Proceedings," dated March 20, 2005, which included the date, time, and location of the proceeding.

The defendant argues that *Banegas-Gomez* is no longer good law because it was issued "before the Supreme Court clarified, in *Niz-Chavez v. Garland*, [141 S. Ct. 1474, 1485 (2021),] that the two-step notice process is an impermissible departure from the statute's clear text."  Ltr. at 2.  But in *Niz-Chavez*, the Court merely held that an NTA sufficient to trigger the "stop time" rule is a single document containing all the removal hearing information specified in 8 U.S.C. §1229 (a)(1).  This holding was consistent with a 2018 decision, decided before *Banegas-Gomez*, that a notice that omits such information does not trigger the "stop time" rule.  *Pereira v. Sessions*, 138 S. Ct. 2105 (2018).  Notably, in *Banegas-Gomez*, the Second Circuit expressly determined that there was "no basis for reading *Pereira*—which dealt only with the 'stop time' rule, which is not relevant to this case—to divest an Immigration Court of jurisdiction" for omissions in an NTA. 922 F.3d at 105.  The same is true here: there is no basis for reading *Niz-Chavez*, which deals only with the "stop time" rule, in such a way.

The defendant gestures at a third argument that it contends was never raised before the *Banegas-Gomez* Court.  But this Court need not reach that argument—or other arguments disputing the immigration court's jurisdiction—for the independent reason that the defendant has not satisfied Section 1326(d).  That provision requires a defendant challenging the validity of a deportation order to prove that: "(1) the alien exhausted any administrative remedies available to seek relief against the order; (2) the deportation proceeding that resulted in the issuance of the order deprived the alien of the opportunity for judicial review; and (3) the entry of the deportation order was fundamentally unfair."  8 U.S.C. § 1326(d).  The defendant does not dispute that he failed to appeal the immigration judge's ruling or contend that he was denied judicial review, nor can he show prejudice—i.e., that "absent the procedural errors, he would not have been removed"—as required to demonstrate fundamental unfairness.  *Taveras*, 504 F. Supp. 3d at 289. The defendant therefore has no recourse to collaterally attack his removal proceeding.

## B.     The Defendant's Equal Protection Challenge to 8 U.S.C. § 1326 Fails.

The defendant's challenge to the constitutionality of Section 1326 also fails for the reasons set forth by every other court to address the issue, with the exception of the U.S. District Court for the District of Nevada.  *See United States v. Carrillo-Lopez*, No. 20-26 (D. Nev. August 18, 2021). The defendant relies solely on a recent decision in which the District Court of Nevada ruled that § 1326, although facially neutral, violates the Equal Protection Clause under the test established in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), because it was enacted with racist and discriminatory intent and has a disparate impact on Latinx

August 27, 2021
Page 3

persons.  Ltr. at 3.  Even assuming heightened scrutiny under *Arlington Heights* is appropriate,[1] this reasoning has been almost uniformly rejected in the federal courts for the defendants' failure to show that "racially discriminatory intent or purpose" was indeed a "motivating factor" in the enactment of Section 1326 or neighboring statutory provisions.  *United States v. Medina Zepeda*, No. 20-57 (C.D. Cal. 2021); *United States v. Palacios-Arias*, No. 20-62 (E.D. Va. Oct. 13, 2020); *see also USA v. Gallegos-Aparicio*, 19-2637, 2020 WL 7318124, at *4 (S.D. Cal. Dec. 11, 2020) (failure to show discriminatory intent as to Section 1325); *United States v. Rios-Montano*, No. 19-CR-2123-GPC, 2020 WL 7226441 (S.D. Cal. Dec. 8, 2020) (same).[2]

Specifically, the defendant argues that "[t]he illegal re-entry statute was enacted in 1929 with explicit racial animus against persons of Latinx descent," and that its reenactment in 1952 "did not purge the taint of Congress's original motive."  Ltr. at 3.  In fact, because Section 1326 was enacted and illegal entry first deemed a felony as part of the Immigration and Nationality Act of 1952 ("INA"), the INA is the relevant statutory framework.  *Medina Zepeda*, at 5.  Thus, contrary to the *Carillo-Lopez* Court's findings, neither evidence of a previous Congress's motivations for enacting earlier legislation, nor the mere lack of evidence regarding the later Congress's motivations for enacting the INA, is relevant to assessing Section 1326's constitutionality.  *Compare Carillo-Lopez*, at 18 (finding that "a lack of debate regarding recodification of Section 1326 in 1952 . . . supports Carrillo-Lopez's argument that discriminatory intent was a motivating factor in its reenactment in 1952"), *with Medina Zepeda*, at 5 ("Defendant provides no authority or basis for the court to evaluate the 1952 statute solely on the basis of the legislative history relating to the Undesirable Aliens Act of 1929."); *Palacio-Arias*, at 6-7 ("[the defendant] largely confines his evidence and argument to the INA's much older predecessor"); *Rios-Montano*, 2020 WL 7226441, *5-*6 (rejecting defendant's reliance on the "lack of Congressional disavowal of the discriminatory purposes of the previous version" of the statute).

The defendant's constitutional challenge has no legs and should be rejected.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:  _____
Jane Chong
Assistant United States Attorney
(917) 763-3172

Cc:  Sylvie Levine and Isaac Wheeler, Federal Defenders of New York (via ECF)

---

[1] Because Congress's inherent immigration power is "plenary," *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972), Section 1326 is subject to, and easily survives, rational-basis review.  The United States anticipates the defense will argue that Section 1326 is not subject to rational-basis review because it is a criminal law, not an immigration law, but at least two courts have found to the contrary.  *See Hearing Transcript*, *United States v. Navarrete-Castro*, 19-2717, ECF No. 71, at 3 (S.D. Cal. 2021); *United States v. Palacios-Arias*, No. 20-62, at 4, 7 (E.D. Va. Oct. 13, 2020).

[2] For the Court's convenience, these unpublished decisions are attached as Exhibit A.