

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 13, 2021

**BY ECF**
The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Manuel Suquilanda*, 21 Cr. 263 (VM)

Dear Judge Marrero:

      At the September 17, 2021 conference, the Court provided the defendant Manuel Suquilanda a second opportunity to address the merits of his challenges to the Indictment, regarding (i) allegedly fatal deficiencies in the Notice To Appear ("NTA") charging him with removability, and (ii) the alleged unconstitutionality of 8 U.S.C. § 1326 under the Equal Protection Clause.[1]  The defendant's letter fails to show that the arguments and authorities already presented to this Court are inadequate to assert his claims.  Further briefing on these issues is not warranted.

      In his letter, the defendant notes one "legal issue of first impression" relating to his first claim: whether "Congress tied the immigration judge's jurisdiction to the filing of an NTA that complies with the statute's requirement of notice of hearing, in a session-law provision overlooked in *Banegas-Gomez*." Mot. at 2 (citing Pub. L. No. 104-209, Div. C, § 309(c)(2) (Sept. 30, 1996)).  However, this argument was rejected by the Tenth Circuit as the basis for a jurisdictional challenge in *United States v. Lira-Ramirez*, 951 F.3d 1258 (10th Cir. 2020).  The session-law provision cited by the defendant is a transitional provision enacted by Congress to govern removal proceedings occurring between the adoptive date and effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").  This provision, IIRIRA § 309(c)(2)[2] temporarily permitted removal proceedings under either the old procedure in 8 U.S.C. § 1252b (requiring an order to show cause and a notice of hearing) or the new procedure in 8 U.S.C. § 1229(a) (requiring a notice to appear), and stated that, under the old procedure, "the notice of hearing provided to the alien under [§ 1252b] shall be valid as if provided under [§ 1229(a)] (as amended by this subtitle) to confer jurisdiction on the immigration judge." *Lira-Ramirez*, 951 F.3d at 1262 (quoting IIRIRA § 309(c)(2)).  The Tenth Circuit rejected the defendant's argument that this language shows that the omission of information prescribed by § 1229(a) in an NTA

---

[1] The defendant does not support his assertion that imposition of page limits amounts to unconstitutional "pretermission of a motion." Mot. at 1.  In *United States v. Quinones*, the Second Circuit merely affirmed the district court's ability to consider purely legal challenges to a criminal statute raised at the pre-trial stage, prior to any conviction.  313 F.3d 49, 59 (2d Cir. 2002).

[2] The Tenth Circuit cites subsection (c)(4) rather than subsection (c)(2), but this appears to be a typo, as the Court accurately quotes from subsection (c)(2).

precludes jurisdiction from vesting in the immigration court. Among other things, the Tenth Circuit observed that the provision refers not to an NTA but to a "notice of hearing." *Id.* at 1262.

Any arguments regarding the relevance of the transitional provision are even less compelling in the Second Circuit. Whereas the Tenth Circuit has previously held that the statute and its accompanying regulations are not jurisdictional at all but merely claim-processing rules, the Second Circuit accepts that the issuance of an NTA that conforms with § 1229(a) vests jurisdiction in the immigration court. *Compare Martinez-Perez v. Barr*, 947 F.3d 1273, 1278 (10th Cir. 2020), *with Banegas Gomez v. Barr*, 922 F.3d 101, 112 (2d Cir. 2019). The question is merely whether an NTA must meet *all* the requirements listed in § 1229(a); as explained in *Banegas Gomez*, it need not: because the regulations require that the NTA contain the time, date, and place of a hearing prescribed in § 1229(a) "where practicable," an NTA missing that information vests the immigration court with jurisdiction so long as the defendant is later supplied with the information, as he was here. *Id.* at 111. Nothing in the language of the transitional provision, regarding an NTA's conferral of jurisdiction, undermines the holding in *Banegas Gomez*.

## Other Arguments

The defendant's remaining arguments are meritless for the reasons already set forth in the Government's August 27, 2021 letter and in decisions rendered within and outside this Circuit.

1. The defendant's arguments regarding the deficiency of the NTA based on its omission of immigration court address information are unavailing, for the reasons set forth by two courts in this District. *United States v. Taveras*, 504 F. Supp. 3d 272 (S.D.N.Y. 2020); *United States v. Dominguez-Bido*, No. 20-34 (PAC), 2021 WL 1026386, at *6–7 (S.D.N.Y. Mar. 17, 2021). The defendant's reliance on *United States v. Benitez-Dominguez*, 440 F. Supp. 3d 202 (E.D.N.Y. 2020), to support his position to the contrary disregards the facts presented in this case and rehashes a conflict thoroughly addressed by Judge Engelmayer in *Taveras*. In *Benitez-Dominguez*, Judge Garaufis held that defects in the defendant's NTA—specifically, the omission of the hearing time and date and the address of the immigration court where the NTA would be filed—precluded the vesting of jurisdiction in the immigration court. But in that case, the hearing time and date were never provided to the defendant, and the address of the immigration court was only provided by way of a Notice of a Change in Address, which the Supreme Court has described as a document that "presumes that the Government has already served" a valid NTA, and which Judge Garaufis thus found insufficient to cure the detect. *Id.* at 211 (quoting *Pereira v. Sessions*, 138 S. Ct. 2105, 2108 (2018)). Here, in contrast, on March 28, 2005, five days after being served the NTA, the defendant was served (i) a Notice of Hearing in Removal Proceedings, which included the date, time and location of the removal proceeding, and (ii) a letter, accompanied by a March 28, 2005 certificate of service, advising him that the NTA "will be filed with the Immigration Court at Room 1140, 201 Varick Street, New York, NY 10014"—i.e., the same location of the removal proceeding indicated in the Notice of Hearing in Removal Proceedings.[3] Although Judge Garaufis went on to suggest, in dicta, that a later notice would not have cured the absence of an address in the NTA, as the defendant argues here, Judge Engelmayer rejected that position—and did so based on the regulations, rather than *Auer* deference to the BIA. *Taveras*, 504 F. Supp. 3d at 283.

---

[3] Redacted copies of the NTA, the Notice of Hearing in Removal Proceedings, and the letter advising the defendant of the filing of the NTA at the immigration court are attached as Exhibit A.

October 13, 2021
Page 3

2. Again, the defendant's Equal Protection challenge to § 1326 also fails, irrespective of the scrutiny applied, for the reasons outlined by every court to address nearly identical challenges to § 1326 and its neighboring provisions, save one Nevada court. *See, e.g.*, *United States v. Medina Zepeda*, No. 20-57 (C.D. Cal. 2021); *United States v. Palacios-Arias*, No. 20-62 (E.D. Va. 2020); *United States v. Gallegos-Aparicio*, No. 19-2637, 2020 WL 7318124 (S.D. Cal. 2020) (§ 1325); *United States v. Rios-Montano*, No. 19-CR-2123-GPC, 2020 WL 7226441 (S.D. Cal. 2020) (§ 1325). The defendant's attempt to yoke § 1326 to a 1929 law is unpersuasive for the myriad reasons set forth in these decisions, not merely because § 1326 was first enacted in 1952.

For instance, § 1326 has been modified numerous times since 1952, to enhance penalties or otherwise increase its deterrent value, including in 1988, 1990, 1994, 1996, and 1997.[4] The defendant does not cite relevant evidence to support discriminatory intent as to these revisions, or legislative history specific to the actual provision at issue, § 1326. *See* Mot. at 3. The defendant instead (i) points again to the Nevada decision, which finds discriminatory intent in the 1952 law based on congressional silence as to racial animus, as well as "circumstantial evidence" consisting of President Truman's veto, a slur from non-legislator Deputy Attorney General Peyton Ford, and a separate, allegedly discriminatory bill passed a few months before the INA, *United States v. Carrillo-Lopez*, No. 320CR00026MMDWGC, 2021 WL 3667330, at *10–16 (D. Nev. Aug. 18, 2021), and (ii) quotes from an expert declaration filed in a Texas court, which narrates the xenophobia evident in the statements of third parties and certain legislators at points in our nation's history, but identifies little evidence for the courts to assess regarding § 1326, Decl. of Dr. S. Deborah Kang, *United States v Cadena-Salinas*, No. 19-850 (W.D. Tex.) at 13 (ECF No. 45-1) ("the legislative history of the 1952 revision to the Undesirable Aliens Act is very thin"), 42 ("the legislative history of the 1990 amendment to 8 U.S.C. § 1326 is very thin"). This inability to show discriminatory intent as to the 1952 law or later revisions of § 1326 is fatal to his Equal Protection claim. *See Hayden v. Paterson*, 594 F.3d 150, 165 (2d Cir. 2010) (no plausible claim of intentional discrimination as to the enactment of a state constitutional provision where plaintiffs alleged impermissible motive only as to earlier enactments).

The defendant has not demonstrated the merit of his challenges to the Indictment or the need for further briefing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Jane Chong
Assistant United States Attorney
(917) 763-3172

---

[4] Pub. L. No. 100-690, § 7345, 102 Stat. 4181; Pub. L. No. 101-649, 104 Stat. 4978; Pub. L. No. 103-322, 108 Stat. 1796; Pub. L. No. 104-132, 110 Stat. 1214; Pub. L. No. 104-208, 110 Stat. 3009. *Cf. Gallegos-Aparicio*, 2020 WL 7318124, at *4 ("The thorough deliberative process Congress undertook in 1990, combined with the lack of legislative history addressing Section 1325, underscores the absence of proof of the 101st Congress's discriminatory intent.").