```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/20/21
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------X
UNITED STATES OF AMERICA,          :
                                   :
                                   :           **21 CR 263 (VM)**
            -against-              :           <u>**DECISION AND ORDER**</u>
                                   :
MANUEL ANTONIO SUQUILANDA,         :
                                   :
                Defendant.         :
----------------------------------X

**VICTOR MARRERO, U.S.D.J.:**

Defendant Manuel Antonio Suquilanda ("Suquilanda") was charged with illegal reentry after removal subsequent to a conviction for an aggravated felony in violation of 18 U.S.C. Sections 1326(a) and (b)(2) ("Section 1326"). (<u>See</u> "Indictment," Dkt. No. 7.) Now before the Court is Suquilanda's motion to dismiss the Indictment on the grounds that the Immigration Court that ordered his removal, a prerequisite for illegal reentry, did not have jurisdiction to do so, and that Section 1326 is unconstitutional because it violates the Fifth Amendment to the Constitution's equal protection guarantee. (<u>See</u> "Motion," Dkt. No. 27.)

In support of the Motion, Suquilanda filed two letters dated August 20, 2021 (<u>see</u> Motion) and October 1, 2021 (<u>see</u> Dkt. No. 28). The Government has filed two letters in opposition dated August 27, 2021 (<u>see</u> Dkt. No. 34) and October 13, 2021 (<u>see</u> Dkt. No. 35), as well as counsels' oral presentations at hearings held on September 17, 2021 and

1

October 15, 2021. For the reasons set forth below, the Motion is DENIED.

## I. BACKGROUND

A. FACTUAL AND PROCEDURAL HISTORY

On March 23, 2005, Suquilanda was issued a Notice to Appear ("NTA") which began removal proceedings against him in New York Immigration Court. (See Dkt. No. 35, Ex. A at 3-5.) That NTA did not contain certain information required by statute or regulation including, as relevant to this Motion, the date, time, and place of his initial hearing, as well as the address of the Immigration Court at which his NTA was to be filed. (See id.) On March 28, 2005, Suquilanda received a notice that informed him the address of the Immigration Court at which his NTA was to be filed. (See id. at 2.) Also on March 28, 2005, Suquilanda received a notice of hearing which informed him of the date, time, and place of his initial hearing. (See id. at 1.) On or about April 13, 2005, the presiding Immigration Judge ordered Suquilanda's removal and, on or about May 15, 2005, Suquilanda was removed from the United States. (See Dkt. No. 1, at 2.)

A complaint was filed against Suquilanda on March 19, 2021, alleging that Suquilanda unlawfully reentered the United States after having been removed subsequent to a conviction for an aggravated felony. (See id.) On June 6,

2

2021, Suquilanda moved this Court for dismissal of the indictment based on alleged improprieties with the jury selection procedure used to sit the grand jury that returned Suquilanda's indictment. (See Dkt. No. 17.) The Court denied that motion on August 9, 2021. (See Dkt. No. 24.) Suquilanda now brings this second Motion to dismiss the indictment.

B.   THE PARTIES' ARGUMENTS

Suquilanda argues that the Immigration Court that ordered his removal lacked jurisdiction over his removal proceeding because (1) his NTA was missing certain information required by regulation for the NTA to confer jurisdiction and (2) Suquilanda's jurisdictionally deficient NTA cannot be cured by a subsequent notice of hearing, as the Second Circuit held in Banegas Gomez v. Barr, 922 F.3d 101, 112 (2d Cir. 2019), based on congressional session-law, Pub. L. No. 104-209, Div. C, § 309(c)(2) (Sept. 30, 1996) (the "Session Law"), which he argues ties jurisdiction to the statutory requirements for NTAs found in 8 U.S.C. Section 1229(a). He also argues that Section 1326 is unconstitutional under the Fifth Amendment's equal protection guarantee because it was enacted with racial animus and discriminatory intent.

The Government counters that the Immigration Court had jurisdiction over Suquilanda's removal proceedings because

3

(1) the NTA contained sufficient information, or was later cured, such that it conferred jurisdiction and (2) <u>Banegas-Gomez</u> precludes any argument that a deficient NTA cannot be cured by a later notice of hearing despite the language of the transitional Session Law. Further, the Government argues there is insufficient evidence of racial animus or discriminatory intent to establish that Section 1326 in unconstitutional under the Fifth Amendment.

## II.   DISCUSSION

A.   <u>JURISDICTIONAL CHALLENGE</u>

Before turning to Suquilanda's arguments on jurisdiction, an overview of the regulatory framework governing Immigration Court procedure is necessary. 8 CFR Section 1003.14 states that "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a <u>charging document</u> is filed with the Immigration Court by the Service" (emphasis added). Section 1003.13 defines "charging document" as "includ[ing] a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." Section 1003.15(b) then elaborates that a NTA "must" contain the following information: "(1) The nature of the proceedings against the alien; (2) The legal authority under which the proceedings are conducted; (3) The acts or conduct alleged to be in

4

violation of law; (4) The charges against the alien and the statutory provisions alleged to have been violated; (5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authorized to appear pursuant to 8 CFR 1292.1; (6) <u>The address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear</u>; and (7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 1003.26." (emphasis added). Also with respect to the NTA, Section 1003.18(b) states that the NTA shall provide . . . the time, place and date of the initial removal hearing, where practicable."

There has been a proliferation of cases regarding the jurisdiction of Immigration Courts stemming from the Supreme Court's decision in <u>Pereira v. Sessions</u>, 138 S. Ct. 2105 (2018). In <u>Pereira</u>, the Court held that a NTA that did not provide "time and place" information regarding the initial hearing was not sufficient to trigger the "stop-time" rule as an NTA is defined under 8 U.S.C. Section 1229(a). 138 S. Ct. at 2110. Given that, in practice, the NTA is the primary "charging document" for removal proceedings under Section 240

5

of the Immigration and Nationality Act, many cases followed arguing that NTAs that omitted time and place information regarding the initial hearing were not "charging documents" sufficient to vest jurisdiction in Immigration Court under the regulatory framework described above.

Many courts, including the Second Circuit, have rejected this argument to the extent it concludes that a deficient NTA automatically prevents an Immigration Court from exercising jurisdiction. See Banegas-Gomez v. Barr, 922 F.3d 101, 112 (2d Cir. 2019). Instead, these courts have held that a NTA missing the relevant date and time information regarding the initial hearing may be cured by a subsequent hearing notice which contains the required information. In Banegas-Gomez, the Second Circuit relied primarily on 8 C.F.R. Section 1003.18(b), which states an NTA need only "contain the time, date, and place of a hearing 'where practicable.'" (emphasis added). The Court reasoned that because the time, date, and place of a hearing was only required "where practicable," "an NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction in the Immigration Court, at least so long as a notice of hearing specifying this information is later sent to the alien." Banegas-Gomez, 922 F.3d at 112. Thus, to the extent Suquilanda argues no jurisdiction vested in the

Immigration Court because his NTA did not contain time and date information regarding his initial hearing -- which it did not -- the Second Circuit has explicitly foreclosed that argument and this Court therefore rejects it as well.[1]

However, Banegas-Gomez did not explicitly address whether the place of the initial hearing -- also omitted from Suquilanda's NTA -- could be cured by a subsequent hearing notice. But even with respect to place, the Court concludes that this information may be cured. There is no basis in the text or structure of the regulations for treating the date and time of the initial hearing as curable under Section 1003.18(b), but the place of the initial hearing as not curable under that same section. Section 1003.18(b) refers to place in the exact same manner as date and time; it states that place information must only be included in the NTA "where practicable." Therefore, it is fully consistent with the regulatory language of Section 1003.18(b) as well as the reasoning of Banegas-Gomez to treat place information as curable as well. Thus, just as at least two courts in this district already have held, the Court concludes that if the

---

[1] Suquilanda argued in his Motion that the Second Circuit's holding in Banegas-Gomez was called into question by the Supreme Court's subsequent holding related to this issues in Niz-Chavez v. Garland, 141 S. Ct. 1474 (2021). After Suquilanda advanced this argument, the Second Circuit ruled that Niz-Chavez did not upset the holding Banegas-Gomez, and therefore Banegas-Gomez remained good law. See Chery v. Garland, --- F.4th ----, 2021 WL 4805217 (2d. Cir. Oct. 15, 2021).

7

place of the initial hearing is not contained in the original NTA, that missing information may be cured by a subsequent notice of hearing. See United States v. Taveras, 504 F. Supp. 3d 272 (S.D.N.Y. 2020); United States v. Dominguez-Bido, No. 20 CR 0034, 2021 WL 1026386, at *6-7 (S.D.N.Y. Mar. 17, 2021). Since Suquilanda received such a subsequent notice with time, date, and place information, (Dkt. No. 35, Ex A at 2), the Court concludes there are likewise no jurisdictional concerns with respect to the place of the initial hearing.

But, Suquilanda also raises a separate question with respect to his NTA and the regulatory framework with a much less clear answer. Section 1003.15(b)(6) requires the NTA to include the address of the Immigration Court where the NTA will be filed. There is no dispute Suquilanda's NTA did not contain this address information. And, the Court agrees with Suquilanda that "place of initial hearing" and "address where the NTA will be filed" are two separate requirements under the regulatory framework, and may well refer to two separate pieces of information as a matter of empirical fact. In fact, the Government appears to acknowledge -- at least tacitly -- the same, as Suquilanda was served with a notice informing him where his NTA was to be filed wholly separate from the notice of hearing which the Court has concluded cured the lack of time, date, and place information in the NTA. Section

8

1003.18(b), which by its "where practicable" language allows "time, date, and place" information regarding the initial hearing to be cured by a later notice, makes no reference to the address of the Immigration Court where the NTA will be filed. Further, the regulations state the NTA "must" include that information. See 8 C.F.R. 1003.15(b). Thus, the Court concludes that based on the plain language of the relevant regulations, the requirements of Section 1003.15(b) cannot be cured by a later notice. See United States v. Benitez-Dominguez, 440 F. Supp. 3d 202, 210 & n.5 (E.D.N.Y. 2020).

But this conclusion that filing address information may not be cured after the fact does not end the analysis in Suquilanda's favor. In Matter of Rosales Vargas, 27 I. & N. Dec. 745 (B.I.A. 2020), the Board of Immigration Appeals ("BIA") held that the requirements of Section 1003.15(b) were not jurisdictional, but rather "claims processing" requirements. See also, e.g., Aguilar Fermin v. Barr, 958 F.3d 887 (9th Cir. 2020); Lopez-Munoz v. Barr, 941 F.3d 1013, 1016 (10th Cir. 2019); United States v. Cortez, 930 F.3d 350, 358-59, 361 (4th Cir. 2019). The BIA reasoned that "[t]he rule at 8 C.F.R. § 1003.15(b)(6) was promulgated as one of a number of procedural rules that govern the Immigration Courts." 27 I. &. N. Dec. at 750. The BIA argued these requirements "serve to outline the steps needed to docket a

9

case in a particular Immigration Court and to ensure the efficient administrative handling of cases within the Executive Office for Immigration Review." Id. at 752. The BIA concluded that even if a NTA did not comply with the requirements of Section 1003.15(b), as long as the required information was eventually provided to the alien, the Immigration Court is not divested of jurisdiction, and the underlying removal remains sound. Id. As explained below, the Court is persuaded it must follow this conclusion.

But first, the Court notes that in Rosales-Vargas the BIA concluded that the address of the Immigration Court where the NTA was to be filed could also be cured by Section 1003.18(b). 27 I. &. N. Dec. at 750 & n. 9. On this point, the Court disagrees. As noted above, the BIA appears to conflate the "address of the Immigration Court at which the NTA is to be filed" with the "place" of the initial hearing. And the BIA offers up a tortured reading of the relevant regulations to conclude those two pieces of information are in fact the same, or at least constructively so. See id. at n. 9. But, Suquilanda persuasively points out that these two pieces of information may in fact be different in practice and, again as noted above, in Suquilanda's case the Government actually sent two separate notices providing those two pieces of information. (See Dkt. No. 35, Ex. A.) There is simply no

10

reason for the Government to have sent Suquilanda a separate notice with the address at which his NTA was to be filed if that information would have been adequately conveyed (either explicitly or constructively) by the Notice of Hearing Suquilanda received on that same day. Therefore, as to the BIA's conclusion that the address information in Section 1003.15(b) may be cured by reference to Section 1003.18(b), the Court disagrees.[2]

However, even though the Court is persuaded the NTA was not curable as to the address of filing by later notice by the plain text of the regulations, the Court concludes it must defer to the BIA's interpretation of when a NTA validly represents a charging document that confers jurisdiction. See Auer v. Robbins, 519 U.S. 452 (1997); Kisor v. Wilkie, 139 S.Ct. 2400 (2019); Linares-Huarcaya v. Mukasey, 550 F.3d 224 (2d. Cir. 2008). The Court is persuaded that the regulatory definition of what constitutes a "charging document" -- which confers jurisdiction under the regulations -- is ambiguous on what information it must include to actually confer jurisdiction. And, when considering the BIA's reasoning about the purpose and structure of the regulations, the Court finds

---

[2] This conclusion is again bolstered by the text of the regulations. Once one rejects the notion that "place of the initial hearing" and "address at which the NTA is filed" are two separate pieces of information, Section 1003.18(b) make no reference to any of the provisions of Section 1003.15(b) being curable.

that BIA's interpretation of the requirements of Section 1003.15(b) as "claims processing" requirements is at least reasonable. See Chery v. Garland, --- F.4th ----, 2021 WL 4805217, at *5 n.36 (2d. Cir. Oct. 15, 2021) (citing 8 C.F.R. 1003.14 as "vesting jurisdiction with the IJ 'when a charging document is filed' and requiring only that the charging document include 'a certificate showing service'"); see also Auer, 519 U.S. at 457-58; Linares-Huarcaya, 550 F.3d at 228-29. The Court therefore must defer to the BIA and, based on Rosales-Vargas, the Court finds that the Immigration Court had jurisdiction over Suquilanda's removal procedures. The Court is aware this issue is on appeal in certain circuits and may reconsider its opinion here should the BIA's conclusions in Rosales-Vargas be overturned or called into question.

Finally, the Court rejects Suquilanda's argument that the Session Law ties jurisdiction to the Statutory requirements in 8 U.S.C. Section 1229(a) –- which Suquilanda argues mandates time, date, and place information to be included in the NTA. This argument is essentially another version of the Pereira argument, which goes that because under Pereira the statute – and not the regulation – requires one single NTA to include such time, date, and place information to trigger the "stop-time" rule, it also requires one single

12

NTA to contain that information in order to validly confer jurisdiction. But, the Second Circuit noted in Banegas-Gomez that "[t]he statutory text does not, however, explain when or how jurisdiction vests with the immigration judge — or, more specifically, denote which of the several requirements for NTAs listed in § 1229(a)(1) are jurisdictional." 922 F.3d at 110 (citing Hernandez-Perez v. Whitaker, 911 F.3d 305, 313 (6th Cir. 2018)). And further, "Section 1229 in fact 'says nothing about the Immigration Court's jurisdiction.'" Id. (citing Karingithi v. Whitaker, 913 F.3d 1158, 1162 (9th Cir. 2019)). Therefore, "no such statutory glue bonds the Immigration Court's jurisdiction to § 1229(a)'s requirements," and the regulations, not the statute, were the source of the jurisdictional requirements. Id. at 111. The Court is not persuaded that the existence of the transitory Session Law – no matter if overlooked by the Second Circuit – provides the "statutory glue" that Suquilanda needs to make Section 1229(a)'s requirements jurisdictional. See United States v. Lira-Ramirez, 951 F.3d 1258, 1262 (10th Cir. 2020) ("[T]he language of a separate transitional provision couldn't provide the clear statement necessary to render § 1229 jurisdictional."). And further, even if it did, the Session Law does not "denote which of the several requirements for NTAs listed in § 1229(a)(1) are jurisdictional." Banegas-

13

Gomez, 922 F.3d at 110. Therefore, the Court rejects the argument that the Session Law somehow requires one NTA to include time, date, and place information regarding the initial hearing in order to confer jurisdiction.

Because the Court concludes that Suquilanda's NTA could be -- and was in fact -- cured of the time, date, and place information regarding his initial hearing, and because the Court concludes the address of the Immigration Court where his NTA was to be filed was a "claims processing" requirement and not a jurisdictional one, the Court will deny Suquilanda's motion to dismiss on the jurisdictional point.

B.  Section 1326

Next, Suquilanda argues that Section 1326 was enacted with racial animus and discriminatory intent and therefore violates the equal protection guarantee of the Fifth Amendment. Suquilanda relies heavily on United States v. Carrillo-Lopez, No. 20 CR 0026, 2021 WL 3667330, at *10-16 (D. Nev. Aug. 18, 2021), which found that Section 1326 was unconstitutional for substantially the same reasons Suquilanda argues here. This opinion appears to be somewhat of an outlier, as the Government correctly points out the vast majority of courts that have considered this exact issue have upheld Section 1326. (See Dkt. No. 35, at 3 (collecting cases).)

14

After reviewing the relevant legal authority, as well as the factual submissions referred to in both Carrillo-Lopez and the cases cited by the Government, the Court concludes that even if it applied the strict scrutiny of Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977),[3] there are no equal protection issues here.

Specifically, the Court is persuaded that the vast majority of the evidence of racial animus and discriminatory intent focuses on the 1929 Undesirable Aliens Act, a precursor to the modern-day Section 1326, which was undoubtedly enacted in the face of bald racial animus towards Hispanic people. But this evidence bears little weight on Section 1326, which was officially reenacted as a felony offense in 1952 as part of the broader Immigration and Nationality Act. See, e.g., United States v. Gallegos-Aparicio, No. 19 CR 2637, 2020 WL 7318124, at *3-4 (S.D. Cal. Dec. 11, 2020); United States v. Rios-Montano, No. 19 CR 2123, 2020 WL 7226441, at *3 (S.D. Cal. Dec. 8, 2020). Further, this provision has been modified a number of times since 1952 in order to enhance penalties or otherwise rebalance the deterrent effect of the law.

The discriminatory intent with respect to these

---

[3] Because the Court would reject Suquilanda's argument under the strict standard of Arlington Heights, the Court need not conclude which level of review applies.

enactments, and later amendments, is most relevant to a finding of discriminatory intent. And, the Court is not persuaded Suquilanda, or any other criminal defendant in the many cases rejecting such arguments, has carried his burden of showing Section 1326 was enacted, or later modified, with discriminatory intent. See, e.g., Gallegos-Aparicio, 2020 WL 7318124, at *3 (noting specifically the legislative history of the 1990 amendment which was void of evidence of discriminatory intent).

Because the Court concludes Section 1326 was not enacted with discriminatory intent, the Court denies Suquilanda's Motion with respect to the Section 1326 arguments.

### III.  ORDER

Accordingly, for the reasons set forth above, defendant Manuel Antonio Suquilanda's motion to dismiss the indictment (Dkt. No. 27) is **DENIED.**

**SO ORDERED:**

Dated:    New York, New York
          20 October 2021

_____
Victor Marrero
U.S.D.J.